IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 26, 2009

## STATE OF TENNESSEE v. CONRAD EARL EDWARDS

**Appeal from the Criminal Court for Hamilton County**
**No. 260646     Don W. Poole, Judge**

---

**No. E2009-00394-CCA-R3-CD - Filed April 16, 2010**

---

The Defendant, Conrad Earl Edwards, was convicted of rape, a Class B felony, incest, a Class C felony, and sexual battery, a Class E felony. He was sentenced to serve eight years as a Violent Offender for rape, three years as a Range I offender for incest, and one year as a Range I offender for sexual battery. On appeal, he challenges the trial court's failure to sentence him as an especially mitigated offender and the denial of alternative sentencing. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Ardena J. Garth, District Public Defender, and Richard Kenneth Mabee, Assistant Public Defender, for the appellant, Conrad Earl Edwards.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; William H. Cox, III, District Attorney General; and James A. Woods, Jr., and Leslie Anne Longshore, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

The Defendant's crimes relate to a sexual assault of his stepdaughter. At the trial, the State presented evidence that the twenty-four-year-old victim lived with her mother, who was married to the Defendant, and the Defendant. On July 30, 2006, the victim's mother was out of the country. That morning, as the victim was showering, the Defendant came into the bathroom. The victim told the Defendant to leave, but the Defendant continued to approach the victim. The Defendant and the victim struggled, and the victim was able to go into the

nearest room, the Defendant's bedroom. The Defendant forced his way into the room, wrestled the victim to the ground, and restrained her. The Defendant was wearing gloves, and he used rope and a gag on the victim. The Defendant put his mouth on the victim's breasts and genitals and penetrated her vagina with his fingers. The victim was able to get up and go to the kitchen, and the Defendant followed her, and then he followed her into her bedroom. The Defendant told the victim he wanted to sleep with her and that she should not tell anyone what he had done.

The victim was able to leave the house and meet a friend, to whom she reported what the Defendant had done. The victim's friend notified the police against the victim's wishes. The victim gave a statement to the police, and at their request, she called the Defendant twice to try to get him to talk about the assault. The recording of the telephone calls was played for the jury. In them, the Defendant never denied that he sexually assaulted the victim. He answered the victim's questions affirmatively that he would not hurt or pursue her if she went home. The Defendant told her he thought the phones were being monitored and did not want to talk about it on the phone.

The State presented evidence that the victim had physical injuries consistent with her account of the events. A gag, a rope, and gloves were recovered from the Defendant's car when he was arrested. DNA consistent with that of the victim and the Defendant were found on these items.

The State played the Defendant's pretrial statements, in which he said he and the victim had a disagreement and tussled because he wanted her to move out and was "tired of paying her bills." The Defendant denied any sexual contact with the victim and characterized the victim as a "pathological liar." When asked about cuts on his hands, the Defendant said he was helping a friend move a refrigerator, but he would not provide his friend's name.

The defense did not present any proof at the trial. The jury found the Defendant guilty of the charged offenses of rape, sexual battery, and incest.

At the sentencing hearing, the court received the presentence report and the sexual risk assessment report. The presentence report reflected that the Defendant had no prior criminal history but had a pending weapons charge related to his arrest for the present case. The Defendant had served in the Army, had worked as a civil servant for the Army, had a high school diploma, and had some college education. The victim's mother was the Defendant's fourth wife, and the Defendant had two children with a previous wife, although he had not seen his children in over thirty years.

The Defendant told the author of the sexual risk assessment report that he and the victim were in love and that he never had sex with her. He became enraged when he talked about the rape trial in the interview. He reported five marriages, in contrast to the four he reported to the author of the presentence report. He denied alcohol abuse. The report stated, "Mr. Edwards shows a very low static risk level, at the same time his dynamic risk appears to be moderate to high. This would . . . generally indicate that he is a moderate overall risk."

The sixty-one-year-old Defendant made an allocution. He did not contest that he committed the offenses, but he said the offenses were a product of "misguided love." He characterized his wife as "the most innocent victim" of his actions. He said he was taking a vow of celibacy and would avoid women "like the plague" for the rest of his life. He outlined a recovery program he had designed for himself that was based upon the twelve-step program of Alcoholics Anonymous. He said he had worked to improve himself through anger management and life skills classes and Bible study. He said he would comply with any court-ordered therapy. The Defendant said he would like to continue his education toward a bachelor's degree.

The trial court found two enhancement factors applied. First, it found that the victim was treated with exceptional cruelty during the commission of the offense. See T.C.A. § 40-35-114(5) (2006). The court noted that the victim was bound and gagged during the assault and that she suffered "some somewhat minor personal injuries." The trial court also found that the Defendant abused a position of private trust in committing the offenses, noting that the victim was the Defendant's stepdaughter and had lived in the Defendant's home for many of her formative years and into adulthood. Id. § 40-35-114(14). The court did allow some mitigation for the Defendant's work and military history. The trial court set the sentences at the minimum within the Defendant's range for each offense but declined to sentence him as an especially mitigated offender.

In ordering the Defendant to serve his sentences in the Department of Correction, the trial court stated several considerations. With respect to the nature and circumstances of the offense, the court noted that the victim was bound and gagged and that the rape was incestuous. The court said that despite the favorable consideration due the Defendant for his lack of prior criminal history, his complete estrangement from his family was of concern in evaluating his potential for rehabilitation. The court was concerned whether the Defendant would abide by the terms of probation. The court found that granting an alternative sentence would depreciate the seriousness of the offense and that the rape of a stepchild who had shared a home with the Defendant for fifteen years was shocking, reprehensible, and offensive. The court also found that the Defendant had not accepted responsibility for the crime.

On appeal, the Defendant challenges the court's denial of sentencing as an especially mitigated offender and denial of alternative sentencing. The State argues that the trial court did not err. We agree with the State.

Appellate review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. T.C.A. §§ 40-35-401(d) and -402(d). As the Sentencing Commission Comments to these sections note, the burden is now on the appealing party to show that the sentencing is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing, we may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> the trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994); see T.C.A. § 40-35-210(e).

Also, in conducting a de novo review, we must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40-35-102, -103, -210; see Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236 (Tenn. 1986).

In imposing a specific sentence within the appropriate range of punishment for the defendant:

> [T]he court shall consider, but is not bound by, the following advisory sentencing guidelines:
>
> > (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and
>
> > (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

T.C.A. § 40-35-210. Because the record reflects that the court followed the proper procedure and made appropriate findings, our review is de novo accompanied by a presumption of correctness. See Ashby, 823 S.W.2d at 169.

We consider first the Defendant's argument that he should have been sentenced as an especially mitigated offender. Tennessee Code Annotated section 40-35-109 indicates that it is discretionary on the part of the trial court to sentence as an especially mitigated offender:

> (a) The court may find the defendant is an especially mitigated offender, if:
>
> (1) The defendant has no prior felony convictions; and
>
> (2) The court finds mitigating but no enhancement factors.

T.C.A. § 40-35-109(a) (2006). In the present case, the trial court found two enhancement factors and one mitigating factor. Thus, the Defendant was not eligible for especially mitigated offender sentencing unless the enhancement factors were erroneously applied.

The Defendant argues that the application of enhancement factors by the trial court was error because the factors were not found by a jury beyond a reasonable doubt. His claim is based upon the Tennessee Supreme Court's decision in State v. Gomez, 239 S.W.3d 733 (Tenn. 2007), and the rulings of the United States Supreme Court in Cunningham v. California, 549 U.S. 270 (2007); Blakely v. Washington, 542 U.S. 296 (2004); and Apprendi v. New Jersey, 530 U.S. 466 (2000). The Defendant was sentenced, however, under the law as it existed after the 2005 amendments to the Sentencing Act, which removed presumptive

sentences and which complies with the requirements of the Sixth Amendment. See State v. Banks, 271 S.W.3d 90, 144-45 (Tenn. 2008).

The Defendant also argues that the trial court erred in denying him an alternative sentence. The State contends the trial court did not err. We agree with the State.

When determining if confinement is appropriate, the trial court should consider whether (1) confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct, (2) confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to people likely to commit similar offenses, or (3) measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant. T.C.A. § 40-35-103(1)(A)-(C). The trial court may also consider a defendant's potential or lack of potential for rehabilitation and the mitigating and enhancement factors set forth in Tennessee Code Annotated sections 40-35-113 and -114. T.C.A. §§ 40-35-103(5), -210(b)(5); State v. Boston, 938 S.W.2d 435, 438 (Tenn. Crim. App. 1996). "The sentence imposed should be the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(4). If a defendant is an especially mitigated or standard offender convicted of a Class C, D, or E felony, he or she should be considered as a favorable candidate for alternative sentencing in the absence of evidence to the contrary. T.C.A. § 40-35-102(6).

In the present case, the Defendant was considered to be a favorable candidate for alternative sentencing for the sexual battery and incest convictions, Class E and Class C felonies respectively. He was not entitled to such consideration for the rape conviction, a Class B felony. As the trial court noted, the Defendant failed to accept responsibility for the offenses, which reflected negatively upon his prospect of rehabilitation. According to the sexual risk assessment report, he was a moderate risk for reoffending. He confronted his stepdaughter who had lived in his home for fifteen years while she was in the shower, bound and gagged her, and sexually assaulted her. The trial court did not err in finding that the Defendant should serve his sentences in the Department of Correction.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE